# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DARLENE BRUNETT, | Case No.: 2:18-cv-00168-LA |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION TO CERTIFY** |
| CONVERGENT OUTSOURCING, INC., | |
| Defendant. | Hon. Lynn Adelman |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiff DARLENE BRUNETT, by and through her attorney, James C. Vlahakis submits the following as her Memorandum of Law in Support of her Motion to Certify the proposed putative class action against Defendant CONVERGENT OUTSOURCING, INC. ("Convergent") and in support states as follows:

### I.  Introduction

Plaintiff is a consumer as defined by Sections 1692(a)(3) of Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* (the "FDCPA" or "Act"). Plaintiff filed suit on January 30, 2018, based upon a collection issue sent to her by Defendant on or about February 17, 2018. See Exhibit A, Complaint. This case concerns the legality of all standard form collection letters used by Convergent. The collection letter is a "communication" as defined by Section 1692a(2) of the Act because the letter attempted to collect a consumer debt allegedly owed by Plaintiff to Comenity Capital Bank and in particular, a PayPal Credit Account. See Exhibit B. A copy of the relevant portion of the February 17, 2018, letter is included on the following page. Convergent answered the Complaint and denied that the 1099-C Disclosure language violated the FDCPA. Convergent no longer uses 1099-C Disclosure language on its collection letters.

```
ATERSO01
PO Box 1022
Wixom MI 48393-1022
CHANGE SERVICE REQUESTED
```

**Convergent**
Convergent Outsourcing, Inc.
800 SW 39th St./PO Box 9004
Renton, WA 98057
Mon-Fri 8AM-5PM PT
877-317-1200

Date: 02/14/2017
Creditor: Comenity Capital Bank
PayPal Credit Account #: 5049906070696679
Convergent Account #: T-40011303

Reduced Balance Amount:  $ 506.07
Amount Owed:  $1,012.13
Total Balance:  $1,012.13

Darlene Brunett
3148 S 108Th St Apt 203
West Allis WI 53227-4060

---

**Reduced Balance Opportunity**

---

Dear Darlene Brunett:

This notice is being sent to you by a collection agency.  Your PayPal Credit account, has a past due balance of $1,012.13.

Our client has advised us that they are willing to satisfy your account for 50% of your total balance.  The full amount must be received in our office by an agreed upon date.  If you are interested in taking advantage of this opportunity, call our office within 60 days of this letter.  Even if you are unable to take advantage of this opportunity, please contact our office to see what terms can be worked out on your account. We are not required to make this arrangement to you in the future.

Notice: The Internal Revenue Service may require financial institutions to file Form 1099-C (Cancellation of Debt) to report the discharge of indebtedness of $600.00 or more.

Sincerely,

Convergent Outsourcing, Inc.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**
**NOTICE:  PLEASE SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION.**

As reflected in Plaintiff's Motion for Class Certification, the upper right corner of the collection letter identifies a "Reduced Balance Amount" of $506.07" and directly below that, the letter lists the "Amount Owed: $1,012.13." The center section of the letter contains the words "Reduced Balance Opportunity" within a rectangular box. The first sentence in the body of the letter informed Plaintiff that "[t]his notice is being sent to you by a collection agency." The second sentence in body of the collection letter indicates that Plaintiff "has a past due balance of $1,012.13." states in relevant part: "Our client has advised us that they are willing got to satisfy your account for 50% of your total balance."

2

The collection letter (and hundreds like it) contained the following phrase:

> Notice: The Internal Revenue Service may require financial institutions to file Form 1099-C (Cancellation of Debt) to report the discharge of indebtedness of $600 or more.

(hereafter the "1099-C Disclosure language").

Section 1692e of the FDCPA states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and Section 1692e(10) which states that a debt collector may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

The 1099-C Disclosure language constitutes a false, deceptive, and misleading representation in violation of Section 1692e because under no set of circumstances would the Internal Revenue Service ("IRS") require Convergent or the creditor at issue (Comenity Bank) to file a IRS Form 1099-C. The 1099-C Disclosure language constitutes a false, deceptive, and misleading representation because the proposed scenario – the issuance of a Form 1099-C cannot occur under in light of the amount owed and the proposed discharge of indebtedness. Here, with the principal debt being identified as $1,012.13, the proposed discharge of indebtedness, $506.07, was for less $600.

Defendant violated 1692e(10) which states that a debt collector may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Again, there are no set of circumstances where Defendant or its creditor would have been required to issue a Form 1099-C. Defendant should never have included the 1099-C Disclosure language where any consumer was sent a collection letter where the discharge of indebtedness was less than or where the subject debt was for less than $600.

The proposed class consists of 2,666 residents of Wisconsin, Indiana and Illinois

who were the collection letters sent to these residents listed (a) an amount owed that was less than $600 or (b) listed a proposed discharge of indebtedness that was for less than $600. Under either scenario, as a matter of law, no IRS Form 1099-C could be issued. Despite knowing this fact, Defendant included the 1099-C Disclosure language on letters sent to individuals owing less $600 or where a proposed discharge of indebtedness was for less than $600. Defendant violated the FDCPA because the IRS disclosure language where no form 1099-C could be issued under the circumstances. This constitutes a deceptive, misleading and false representation.

Defendant may defend the 1099-C Disclosure language by stating that "[t]he Internal Revenue Service *may* require financial institutions to file Form 1099-C (Cancellation of Debt) to report the discharge of indebtedness of $600 or more" (emphasis supplied). But this argument is without merit because under no circumstances could a creditor issue a 1099-C where a consumer's total debt is less than $600, or where a proposed discharge of indebtedness was for less than $600.

## II. **The FDCPA**

### A. **Purpose of the FDCPA**

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). This law "is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt. It also requires debt collectors to give consumers truthful information about their debts, and about their rights as consumers. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g. Consumers may act as "private attorneys general" to enforce

4
Case 2:18-cv-00168-LA   Filed 04/01/19   Page 4 of 17   Document 38

the FDCPA. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

### B. The Unsophisticated Consumer Standard

Whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), held that the "test for determining whether a debt collector violated [the FDCPA] is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer. *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994)." A collection letter can be "literally true" and still be misleading, *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011)—for example, if it "leav[es] the door open" for a "false impression," *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004).

Plaintiff need not prove intent, bad faith or negligence because generally speaking, the FDCPA is a strict liability statute. "[D]ebt collectors whose conduct falls short of [the FDCPA's] requirements are liable irrespective of their intentions." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805-806 (7th Cir. 2009).

For the reasons that follow, the proposed class should be certified because Plaintiff has satisfied all of the requirements of Federal Rule of Civil Procedure 23.

### III. Class Certification Requirements

The proposed class involves:

> (a) all persons who were sent a collection letter in substantially the same form letter as the Collection Letter attached as Exhibit A; (b) to addresses within the States of Illinois, Indiana and Wisconsin; (c) one year prior to the filing of this class action; and (d) where the collection letters were not returned by the postal service as undelivered.

**Numerosity Exists**. This action complains of computer-generated, standard forms used by Defendant. Discovery produced in this case demonstrates that Defendant

5

Case 2:18-cv-00168-LA    Filed 04/01/19    Page 5 of 17    Document 38

mailed 2,666, collection letters to consumers with addresses in the states of Wisconsin, Indiana and Illinois, where the amount owed was less than $600 or the proposed discharge of indebtedness was for less than $600. This 2,666 figure is broken down as follows:

   a. 499 Wisconsin residents were sent a similar 1099 Form Letter;
   b. 1,430 Illinois residents were sent a similar 1099 Form Letter; and
   c. 736 Illinois residents were sent a similar 1099 Form Letter.

The class is so numerous that joinder of all members is impractical.

**Typicality is Satisfied**. Plaintiff's circumstances and claims typical of those of the class members. All are based on the same factual and legal theories. The theory presented is whether a form collection letter violates the FDCPA.

**Commonality is Satisfied**. As discussed below in Section IV, there are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. This case involves a form collection letter. As outlined in Plaintiff's Motion to Certify, the primary questions are whether Defendant's form collection letters violate Sections 1692e, 1692e(5) 1692e(10) and 1692f of the Act. The legal issues are whether the subject language constitutes a deceptive, misleading and false representation where (**a**) a consumer's total debt is less than $600 or (**b**) where a proposed discharge of indebtedness was for less than $600.

**Plaintiff is an Adequate Class Representative**. Plaintiff will fairly and adequately represent the class members. Plaintiff testified that she understood her role as a class representative and she articulated the basis for her cause of action. Exhibit C, Pl's deposition a pp. 13-23, 35-48, 59-61, 64-70.

**Proposed Class Counsel is Appropriate**. Plaintiff has retained counsel experienced in defending and prosecuting consumer class action complaints. For

example, attorney James C. Vlahakis, is a former defense consumer class action defense attorney who worked at the nationally recognized defense firm of Hinshaw & Culbertson from 1998 to 2017. While at Hinshaw & Culbertson, Mr. Vlahakis:

   a. defended and/or prosecuted over a hundred consumer-based claims since 1998;

   b. has obtained approval of multi-million-dollar TCPA based class action settlements in conjunction with class counsel (*see, e.g.,In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL BIotherapries, Inc.* (N.D. Ill.) ($3.5 million fax based settlement);

   c. gained court approval in relation to approximately a dozen FDCPA based class action settlements;

   d. has defeated a TCPA class certification in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013);

   e. has successfully moved to decertify a TCPA based class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012); and

   f. has also obtained favorable declaratory relief before the Federal Communication Commission ("FCC") relative to a TCPA junk facsimile-based cause of action (*see* FCC's Order of October 30, 2014, FCC14-164, in CG Docket Nos. 02-278 and 05-338).

Shortly after being hired by his current firm, Mr. Vlahakis was appointed to serve as a Steering Committee Member in the case of *In re: Apple Inc. Device Performance Litigation*, 18-MD-02827 (N.D. Cal.). In this role, Mr. Vlahakis represents approximately 24 class representatives in the proposed class action.

**Superiority is Satisfied**. A class action is superior for the fair and efficient adjudication of the class members' claims. First, Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute. Second, as set forth in the following Section, this proposed class action is necessary to determine that Defendants' conduct is a violation of law and to bring about its cessation.

## IV. The 1099-C Disclosure Language Violates the FDCPA

The 1099-C Disclosure violates the FDCPA because the language potentially misleads consumers by identifying a scenario that cannot ever take place. While Defendant will argue that the word "may" qualifies the 1099-C Disclosure language, Defendant's argument is nothing more than an after-the-fact justification. Defendant should not have included the 1099-C Disclosure language where it knew – *as a **sophisticated** debt collector* – that no 1099-C will issue where (a) a debt is less than $600 or (b) where an amount owed less than $1,200 and the corresponding "discharge of indebtedness" is less than $600. Defendant should know that 26 U.S.C. § 6050P's reporting requirement "shall not apply to any discharge of less than $600." *Id.*at § 6050P(b).

Here the collection letter listed the "Amount Owed" as "$1,012.13" and the collection letter identifies a "Reduced Balance Amount" of $506.07" – an amount that is less than the $600 threshold provided by the IRA. Defendant, knowing that collection letters are reviewed through the prism of unsophisticated consumer standard, Defendant should have avoided the inclusion of any potentially deceptive or misleading IRS disclosure language.

### A. IRS Language is Misleading

Numerous courts have held that the inclusion of IRS 1099-C disclosure language may be misleading where the amount of the debt may not trigger the issuance of a Form 1099, but where the inclusion of the disclosure language may cause consumers to pay the entire debt to avoid trouble with the IRS.

*Foster v. AllianceOne Receivables Mgmt.*, 2016 U.S. Dist. LEXIS 56958 (N.D. Ill. Apr. 28, 2016) involved a similar set of facts, where debt collector offered to settle a debt where the discharge of indebtedness was less than $600. In particular, the underling

debt was $718.96 debt and the proposed settlement was for $467.32. The dunning letter contained the following disclosure: "[p]lease be advised that any settlement which waives $600.00 or more in principal of a debt *may* be reported to the Internal Revenue Service by our client." (Emphasis supplied). *Id.* at *2.

The consumer in *Foster* alleged that the IRS disclosure language is a "collection ploy designed to deceive or mislead" the consumer into thinking that the IRS could be involved in their debt where there is no set of circumstances in which the IRS would be involved. *Id.* at *5. In response, the debt collector argued that the statement was not misleading on the basis that *it would have obvious* (even to an unsophisticated consumer) *that the IRS disclosure statement would not apply* because the discharged portion of the debt, $251.64, fell below $600.00 threshold was not met. *Id.* at 4-5. As summarized by the court:

> Defendant further argues that the language was an accurate statement of the law and that it was immaterial because it did not apply to Plaintiff. Plaintiff argues that the language is not an accurate statement because there are exceptions to the IRS reporting requirement. As noted by Defendant, the statement in question notes that a settlement "may be reported" to the IRS but does not state that all settlements waiving $600.00 or more would be reported. Further, the language does not imply that any particular outcome might occur except in those cases where a settlement write-off of over $600.00 has occurred.
>
> * * *
>
> At issue in this case is whether the unsophisticated consumer would plausibly be deceived by the Letter, and whether this deception would lead that consumer to settle the matter without negotiating the debt for fear that the settlement would be reported to the IRS.

*Id.* at *4-*5.

*Foster* rejected the debt collector's argument:

> by Defendant's own admission, the offered debt write-off does not meet the $600.00 threshold mentioned. **It is plausible that mention of the IRS in a situation *where there is no set of circumstances in which the IRS would be involved could* mislead** "a person of modest education and limited commercial savvy."

9

Case 2:18-cv-00168-LA   Filed 04/01/19   Page 9 of 17   Document 38

*Id.* at *5-*6.

In *Velez v. Enhanced Recovery Co., LLC*, 2016 U.S. Dist. LEXIS 57832 (E.D. Pa. May 2, 2016), the debt collector sent the plaintiff to collect a debt of $692.70 where the letter offered to settle the debt for $554.16. The letter included the following disclosure: "In addition, any indebtedness of $600.00 or more, which is discharged as a result of a settlement, *may* be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050(P) and related federal law." *3 (emphasis supplied). *Velez* held that the language plausibly violated the FDCPA because the statement **was not true:**

> Accepting the amended complaint's well-pled factual allegations as true, Velez's settlement of this alleged debt, and ERC's cancellation thereof, could not possibly have been reportable under the relevant exceptions. Am. Compl. ¶¶ 16-19. If, in fact, under the circumstances of this case, there could not possibly have been a reportable event, then the statement would be false. *See, e.g., Wagner v. Client Servs., Inc.*, 2009 U.S. Dist. LEXIS 26604, 2009 WL 839073, *4 (E.D. Pa. Mar. 26, 2009) (Baylson, J.) (explaining that absent additional discovery to demonstrate whether Citibank was required to report the discharge of plaintiff's indebtedness, there remained an initial question of whether the collection letter's "required to" language was true or false).
>
> * * *
>
> [T]he use of the contingent 'may' in the Statement here does not materially distinguish it from the challenged language in *Good* because both phrases fail to communicate that there are other exceptional circumstances beyond the threshold amount that affect whether the cancellation of the debt is reportable. Further, the challenged Statement, like the challenged language in *Wagner*, suggests the possibility that the cancelled debt could be reported.
>
> Moreover, the Statement could mislead or deceive the least sophisticated debtor. A debt collector's statement is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate, and it is misleading if it states that a certain action is possible even though the debt collector has reason to know that there are facts that make the action unlikely in a particular case. *Brown*, 464 F.3d at 455.
>
> Velez alleges that the Statement might lead the least sophisticated debtor to believe that he might have to pay a certain amount in order to avoid IRS reporting. Am. Compl. ¶ 23. ERC contends that the Statement is not deceptive or misleading because it is not subject to multiple interpretations, but rather sets forth a generally applicable

> rule. ERC MTD at 8.
>
> Velez states a plausible claim that the Statement is misleading or deceptive. Velez's interpretation of the Statement from the perspective of the least sophisticated debtor is not bizarre or idiosyncratic. The least sophisticated debtor, given a generally applicable rule with some, but not all, of the relevant exceptions thereto, might be misled into thinking that there will be adverse tax consequences for settling a debt for less than the total amount due. The conditional "may" of the Statement does not remove from the realm of possibility that the least sophisticated debtor might be deceived into thinking that ERC must or will report certain settlement amounts to the IRS, even when it does not intend to, or would not be required to, under the relevant statute and regulations.

*Id.* at *6-*9.

*Valez* rejected the same argument advanced by Convergent in this case – that a consumer would understand that a 1099-C would not be issued where the amount of the discharged debt was below the threshold amount of $600: "the amount owed exceed[s] $600, so the least sophisticated debtor who read carefully, but still did not understand whether the threshold applied to the total indebtedness or just the write-off amount after settlement, could be confused or misled." *Id.* at *10-*11, fn 1.

The debt collector in *Balon v. Enhanced Recovery Co.*, 190 F.Supp.3d 385 *(M.D. Penn. 2016) used similar language: "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, *may* be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050(P) and related federal law." 190 F.Supp.3d at 390 (emphasis supplied). *Balon* also rejected the same argument that Convergent is raising – that the debt collector did not violate the FDCPA because the disclosure was an accurate recitation of applicable IRS regulations. Here is how the court framed the debt collector's argument:

> Defendant also states that the IRS Instructions "direct creditors to '[f]ile Form 1099-C, Cancellation of Debt, for each debtor for whom you canceled a debt owed to you of $600 or more.'" (Doc. 4, p. 7) (citing IRS Instructions for Forms 1099-A and 1099-C). Therefore, according to Defendant, "[s]tating that 'any indebtedness of $600.00 or more, which

11

Case 2:18-cv-00168-LA   Filed 04/01/19   Page 11 of 17   Document 38

> is discharged as a result of a settlement, may be reported to the IRS' is entirely consistent with the statute's requirement that applicable entities 'shall make a return,' as well as with the statute's sole exception for discharges of less than $600." (Id.). Thus, Defendant argues, "[t]he controlling statute, regulations, and IRS instructions all specifically require applicable entities to file Form 1099-C when they cancel debts of $600 or more—which is exactly what the challenged sentence says." (Id. at p. 8).
>
> Defendant then argues that the challenged language is neither deceptive nor misleading. (Doc. 4, p. 8).
>
> According to Defendant, "the challenged sentence does not have a reasonable second meaning; it means exactly what it says." (Doc. 4, p. 9). Defendant continues by stating that "[t]he sentence is not subject to multiple interpretations; it is not deceptive or misleading." (Id.). "To the contrary," Defendant claims, "[it] has merely set forth the generally applicable rule."
>
> * * *
>
> Thus, according to Defendant, "[g]iven the breadth of identifiable events covered by 26 C.F.R. § 1.6050P-1(b)(2), it is not misleading to state that '$600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS . . . .'" (Id.)

190 F.Supp.3d at 389-90.

*Balon* held that the settlement of the plaintiff's debt "could not possibly have been reportable under the relevant exceptions." *Id.* at 392 (internal citations omitted). The court also rejected letter's conditional use of "may", holding as follows:

> Moreover, the challenged language's use of the "conditional 'may'. . . does not remove from the realm of possibility that the least sophisticated debtor might be deceived into thinking [Defendant] must or will report certain settlement amounts to the IRS, even when it does not intend to, or would not be required to, under the relevant statute and regulations." *Id.* Thus, Plaintiff states a plausible claim that the statement in question is misleading or deceptive under section 1692e(10) of the FDCPA.

*Id.* at 392 (internal citations omitted).

### B. The Misleading IRS Disclosure Language is Material

"[I]n deciding whether . . . a representation made in a dunning letter is misleading the court asks whether a person of modest education and limited commercial savvy

12

Case 2:18-cv-00168-LA   Filed 04/01/19   Page 12 of 17   Document 38

would be likely to be deceived." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007). The court views the letter through the perspective of an "unsophisticated consumer." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). A false or misleading statement is material if it has "the *ability* to influence a consumer's decision," *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011) (emphasis supplied).

The court in *Foster* held that the subject IRS language – which contained a qualifier of "may" – was a materially misleading statement:

> As a consumer may forego his or her rights related to the disputed debt, by settling the matter without negotiation due to this deception, the statement in question is material. Accepting the Complaint's well-pleaded factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff alleges sufficient facts to state a plausible claim for relief.

2016 U.S. LEXIS 56958, *6.

The plaintiff in *Velez* argued that 1099-C language was materially misleading because the gratuitous injection of the IRS into a collections communication has the potential to affect the least sophisticated debtor's decision-making process. *Velez*, 2016 U.S. Dist. LEXIS 57832 at *9. The court in *Velez* held that the language could plausibly influence the decision-making of the "least sophisticated debtor" *and* lead the debtor to pay a certain sum to avoid trouble with the IRS:

> A false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor, meaning that it is material when viewed from the least sophisticated debtor's perspective. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015). This constitutes a low bar. *Id.*
>
> Even imbued with basic understanding and a willingness to read carefully, the Statement might influence the least sophisticated debtor. It would not be bizarre or idiosyncratic for the least sophisticated debtor to believe that the "invocation of the IRS reasonably suggests…that he or she could get in trouble with the IRS for refusal to pay the debt, or for obtaining any debt forgiveness

> of $600 or more." *Good*, 55 F. Supp. 3d at 748. The least sophisticated debtor could reasonably assume that ERC included the Statement because it was relevant, and such a debtor could believe, given the lack of specificity in the generally-stated rule that mentions one exception but not others, that the action he chooses to take with respect to the debt will trigger tax consequences or reporting requirements. There are myriad other ways that the Statement could, without bizarre or idiosyncratic interpretation, influence the least sophisticated debtor's decision-making process.

*Velez*, 2016 U.S. Dist. LEXIS 57832 at *9-*10; *Balon*,190 F.Supp.3d at 393. *See also, In re Crosby*, 261 B.R. 470, 474 (Bankr. D. Kan. 2001) (noting that there are "actual (or at least potential) tax consequences of the [1099-C] form," including that even if debtors properly reported cancelled debt as income to the IRS, "the IRS could audit their returns and, because of the 1099 - C's, possibly impose additional tax and penalties"); *Kaff v. Nationwide Credit, Inc.*, 2015 U.S. Dist. LEXIS 182048, *20 (E.D. N.Y. Mar. 31, 2015)("The least sophisticated consumer, afraid of an audit, may be pressured by a misstatement such as the one made by Nationwide into paying more of his debt to avoid the risk of triggering an IRS audit."); *Mennes v. Capital One. N.A.*, 2014 U.S. Dist. LEXIS 61729, 2014 WL 1767079, *12 (W.D. Wis. May 5, 2014) ("filing a Form 1099 - C has legal significance to the debtor's income tax liability.")

### C. *Dunbar v. Kohn Law Firm, S.C.*, Does Not Support Defendant

Defendant's heavy reliance on *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762 (7th Cir. 2018) is misplaced. The court in *Dunbar* was not confronted with a debt collection letters that were based upon a false premise – that the cancelation or discharge of the subject debts *might* result in the issuance of a Form 1099-C. Here, as discussed above, under no circumstances can a Form 1099-C be issued where the discounted settlement offer/debt discharge offered to Plaintiff was form an amount of less than $600.

One of the collection letters in *Dunbar* stated that the full balance due was $4,049.08 and offered to settle the debt for $2,631.90. The other letter stated

14

that the balance due was $4,319.69 and invited the consumer to contact the law firm to discuss satisfying her debt obligation for a reduced amount. Both collection letters simply stated: "NOTICE: This settlement may have tax consequences." *Id.* at 764. Under these simple facts, the Seventh Circuit determined that "[b]oth judges [properly] concluded that alerting debtors that a settlement 'may' have tax consequences is neither false nor misleading."

Significantly, the court in *Dunbar* recognized that the letters "did not mention IRS reporting." According to the court:

> In some situations an entity that discharges a debt must file a 1099-C form with the IRS. 26 U.S.C. § 6050P(a). No obligation to report exists if the principal debt forgiven falls below $600. 26 C.F.R. § 1.6050P-1(a)(1), (d)(2)-(3); 26 U.S.C. § 6050P(b). The reporting obligation has no bearing on this case because the law-firm collection letters did not mention IRS reporting.

*Id.* at 765, fn.2.

In contrast, the subject collection in this cases improperly disclose the possibility of IRS reporting where there is no basis under the law to for Defendant to have included a taxable event. Notably, *Dunbar* went to great lengths to distinguish prior cases on the following grounds:

> "Again our case is meaningfully different. The tax-consequences warning does not imply that the debt collector can or will take an action it has no authority to take." (*Id.* at 766);

> "The law-firm collection letters merely signaled as a general matter *that tax consequences are a possibility*. There's nothing misleading about that." (*Id.* at 767) (emphasis supplied); and

> "The tax-consequences warning *is literally true and not misleading* under the objective "unsophisticated consumer" test. (*Id.* at 768) (emphasis supplied).

For these reasons, the Court should grant Plaintiff's Motion to Certify.

15

**WHEREFORE**, for the reasons set forth above, Plaintiff respectfully requests that this Court enter an order: (**a**) certifying the proposed class in this case; (**b**) appointing the Plaintiff as Class Representative; (**c**) appointing James C. Vlahakis as Class Counsel; and (**d**) for such other and further relief as the Court may deem appropriate.

Respectfully submitted,

*/s/ James C. Vlahakis*
James C. Vlahakis
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Phone No.: 630-581-5456
Fax No.: 630-575-8188
jvlahakis@sulaimanlaw.com

*Attorney for Plaintiff Darlene Brunett and the proposed class members*

Dated: April 1, 2019

## CERTIFICATE OF SERVICE

I, James C. Vlahakis, certify that on April 1, 2019, I caused to be filed the above referenced document via the district's ECF system, which shall serve a file stamped copy of this document on all counsel of record.


/s/ James C. Vlahakis